UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

RATASHA D. KING-BAILEY,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

Defendant.

No.  2:15-cv-2024-CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying applications for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"), respectively.  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

I.     BACKGROUND

Plaintiff, born August 20, 1980, applied on February 18, 2013 for DIB and SSI, alleging disability beginning February 16, 2009.  Administrative Transcript ("AT") 43, 94-95, 122-23, 195-202.  Plaintiff alleged she was unable to work due to bipolar disorder, a back injury, arthritis, depression, nerve disease, degenerative disc disease, and a cervical disc problem.  AT 215.  In a

decision dated April 27, 2015, the ALJ determined that plaintiff was not disabled.[1]  AT 9-25.  The

ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.
>
> 2. The claimant has not engaged in substantial gainful activity since February 16, 2009, the alleged onset date.
>
> 3. The claimant has the following severe impairments: back disorder, obesity, and major depression.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

---

[1]     Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 *et seq.*  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. § 1382 *et seq.*  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920, 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except such an individual could occasionally climb, stoop, and crouch.  Such an individual should avoid working at heights or dangerous machinery.   Such an individual could understand, remember, and carry out simple job instructions.  Such an individual could maintain concentration, persistence and pace for simple job tasks.  Such an individual could interact occasionally with the public, and such an individual could interact appropriately with supervisors and co-workers.

6.  The claimant is unable to perform any past relevant work.

7.  The claimant was born on August 20, 1980 and was 28 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.

8.  The claimant has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.  The claimant has not been under a disability, as defined in the Social Security Act, from February 16, 2009, through the date of this decision.

AT 11-24.

II.    ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled:  (1) improperly assessed the impact of plaintiff's obesity at step three of the sequential analysis; (2) improperly found plaintiff's testimony regarding the extent of her limitations and pain less than fully credible; (3) improperly discounted the third party statement of plaintiff's friend; (4) improperly considered and weighed the opinions in the record when determining plaintiff's residual functional capacity ("RFC"); and (5) improperly found that plaintiff could perform other jobs in the national economy that require the ability to perform "light work" after determining plaintiff could not perform her prior work that required only the ability to perform

3

1    "sedentary work."

2    III.    LEGAL STANDARDS

3         The court reviews the Commissioner's decision to determine whether (1) it is based on

4    proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record

5    as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial

6    evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340

7    F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable

8    mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th

9    Cir. 2007) (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).  "The ALJ is

10   responsible for determining credibility, resolving conflicts in medical testimony, and resolving

11   ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted).

12   "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one

13   rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

14        The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th

15   Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's

16   conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not

17   affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see

18   also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the

19   administrative findings, or if there is conflicting evidence supporting a finding of either disability

20   or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226,

21   1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in

22   weighing the evidence.  See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

23   IV.    ANALYSIS

24        A.    The ALJ did not Erroneously Assess Plaintiff's Obesity at Step Three

25        First, plaintiff argues that the ALJ improperly evaluated the impact of plaintiff's obesity at

26   step three of the sequential analysis because she did not find that plaintiff's physical impairments

27   met or equaled listing-level severity when considered in conjunction with plaintiff's obesity.

28   /////

1    The claimant "bears the burden of proving that . . . she has an impairment that meets or

2    equals the criteria of an impairment listed in Appendix 1 of the Commissioner's regulations."

3    Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).  "For a claimant to show that his

4    impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment

5    that manifests only some of those criteria, no matter how severely, does not qualify . . . For a

6    claimant to qualify for benefits by showing that his unlisted impairment, or combination of

7    impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in

8    severity to *all* the criteria for the one most similar listed impairment."  Sullivan v. Zebley, 493

9    U.S. 521, 530-31 (1990).  A determination of medical equivalence must rest on objective medical

10   evidence.  See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) ("A finding of equivalence must

11   be based on medical evidence only."); Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999)

12   ("Medical equivalence must be based on medical findings . . . A generalized assertion of

13   functional problems is not enough to establish disability at step three."); 20 C.F.R. §

14   404.1529(d)(3) ("In considering whether your symptoms, signs, and laboratory findings are

15   medically equal to the symptoms, signs, and laboratory findings of a listed impairment, we will

16   look to see whether your symptoms, signs, and laboratory findings are at least equal in severity to

17   the listed criteria.  However, we will not substitute your allegations of pain or other symptoms for

18   a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that

19   of a listed impairment.").  Furthermore, "[t]he mere diagnosis of an impairment listed in

20   Appendix 1 is not sufficient to sustain a finding of disability."  Key v. Heckler, 754 F.2d 1545,

21   1549 (9th Cir. 1985).  Instead, all of the specified medical criteria must be met or equaled.  Id. at

22   1550.

23       Here, the ALJ "specifically considered whether [plaintiff's] obesity might by itself be

24   equivalent in severity to a listed condition" and "whether it could elevate [plaintiff's] other

25   impairments to listing-level significance."  AT 13.  In determining that plaintiff's obesity did not

26   limit plaintiff to the degree of listing-level severity either by itself or in conjunction with

27   plaintiff's other impairments, the ALJ noted that plaintiff "ha[d] not come forward with any

28   specific evidence on this point or advanced a credible theory as to why the undersigned should

1    find that obesity is or contributes to a listing-level impairment." Id.  Even now, on appeal of the

2    ALJ's decision, plaintiff fails to identify what specific listing or listings her impairments meet or

3    equal, let alone identify any evidence in the record that would reasonably suggest that any of her

4    impairments, individually or in combination, were sufficiently severe to meet the requirements of

5    any listing.  While plaintiff argues in her motion that the evidence shows that she grew

6    progressively more obese over the course of the relevant period and that she suffered certain

7    symptoms commonly associated with obesity, she in no way demonstrates how those symptoms

8    caused her to suffer listing-level limitations, or interacted with her other impairments to cause

9    such limitations.  Because plaintiff failed to meet her burden of showing that her impairments

10   were of listing-level severity, the court finds the ALJ did not err in determining that plaintiff's

11   obesity did not reach listing-level severity, either by itself or in conjunction with plaintiff's other

12   impairments.

13           B.   *The ALJ Properly Found Plaintiff's Pain and Symptom Testimony to be Less than*

14                *Fully Credible*

15           Second, plaintiff argues that the ALJ erred in finding plaintiff's pain and symptom

16   testimony less than fully credible.

17           The ALJ determines whether a disability applicant is credible, and the court defers to the

18   ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g.,

19   Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995).  If credibility is critical, the ALJ must make an

20   explicit credibility finding.  Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v.

21   Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be

22   supported by "a specific, cogent reason for the disbelief").

23           In evaluating whether subjective complaints are credible, the ALJ should first consider

24   objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341,

25   344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ

26   then may consider the nature of the symptoms alleged, including aggravating factors, medication,

27   treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the

28   applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent

1   testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a

2   prescribed course of treatment, and (3) the applicant's daily activities.  Smolen v. Chater, 80 F.3d

3   1273, 1284 (9th Cir. 1996); see generally SSR 96-7p; SSR 95-5p; SSR 88-13.  Work records,

4   physician and third party testimony about nature, severity and effect of symptoms, and

5   inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security

6   Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly

7   debilitating medical problem may be a valid consideration by the ALJ in determining whether the

8   alleged associated pain is not a significant non-exertional impairment.  See Flaten v. Secretary of

9   HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).  The ALJ may rely, in part, on his or her own

10  observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot

11  substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).

12  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's

13  reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan v.

14  Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

15        Here, the ALJ discounted plaintiff's testimony regarding the extent of the symptoms and

16  limitations arising from her physical and mental impairments for the following reasons: (1) her

17  reported daily living activities are inconsistent with her claims that she is not able to prepare her

18  own meals, only able to lift 5 to 10 pounds, is not able to finish what she starts, and her more

19  general claim of having disabling symptoms and limitations; (2) she received relatively

20  conservative treatment that was successful in controlling her symptoms; (3) she did not take any

21  psychotropic medication for her mental impairments for a significant period of time after her

22  alleged onset date; (4) she allowed her pain medication to run out and would try to obtain refills

23  during visits to the emergency room; and (5) her demeanor while testifying at the hearing was

24  generally unpersuasive.  AT 21-23.  As discussed below, these reasons were clear and convincing

25  reasons in support of the ALJ's adverse credibility determination that were supported by

26  substantial evidence in the record.

27        First, the ALJ discounted plaintiff's allegations that she is not able to prepare her own

28  meals, only able to lift 5 to 10 pounds, is not able to finish what she starts, and suffers from

1    disabling symptoms and limitations because they were at odds with plaintiff's reported activities

2    of daily living.  "While a claimant need not vegetate in a dark room in order to be eligible for

3    benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in

4    everyday activities indicating capacities that are transferable to a work setting . . . Even where

5    those activities suggest some difficulty functioning, they may be grounds for discrediting the

6    claimant's testimony to the extent that they contradict claims of a totally debilitating

7    impairment."  Molina, 674 F.3d at 1112-13 (citations and quotation marks omitted); see also

8    Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ properly considered claimant's ability

9    to care for her own needs, cook, clean, shop, interact with her nephew and boyfriend, and manage

10   her finances and those of her nephew in the credibility analysis); Morgan v. Comm'r of Soc. Sec.,

11   169 F.3d 595, 600 (9th Cir. 1999) (ALJ's determination regarding claimant's ability to "fix

12   meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific

13   finding sufficient to discredit the claimant's credibility).

14        Here, the record shows that plaintiff lives with and cares for four of her five children,

15   whose ages ranged from 2 to 17, and spends her days watching her 2-year-old and 4-year-old.

16   AT 49-50.  Plaintiff also reported that she is able to regularly perform household chores such as

17   dusting, wiping tables and counters, doing laundry, and preparing simple meals.  AT 227, 256-57,

18   550.  The record indicates further that plaintiff goes out to shop for groceries and clothes,

19   regularly attends a Bible study class at her church or hosts it at her house, and visits parks and her

20   mother's house.  AT 50, 52, 55, 228, 550.  The record also shows that plaintiff engages in hobbies

21   such as decorating, scrapbooking, and reading the Bible.  AT 557.  The ALJ reasonably cited to

22   this evidence of plaintiff's daily living activities to provide substantial support for her finding that

23   the particular aspects of plaintiff's testimony listed above were less than fully credible.  AT 21.

24        To be sure, the record also contains some contrary evidence, such as plaintiff's and her

25   friend's statements that plaintiff receives assistance from others in caring for her children and

26   performing certain household chores, suggesting that plaintiff's activities are more limited than

27   they would initially appear.  AT 49-50, 52, 57, 62-63, 255-57, 264-65.  However, it is the

28   function of the ALJ to resolve any ambiguities, and the court finds the ALJ's assessment to be

1    reasonable and supported by substantial evidence.  See Rollins v. Massanari, 261 F.3d 853, 857

2    (9th Cir. 2001) (affirming ALJ's credibility determination even where the claimant's testimony

3    was somewhat equivocal about how regularly she was able to keep up with all of the activities

4    and noting that the ALJ's interpretation "may not be the only reasonable one").

5            Second, the ALJ discounted plaintiff's testimony because the record shows that plaintiff

6    received only conservative treatment during the relevant period and that plaintiff's medical

7    condition improved with that treatment.  Plaintiff's relatively conservative treatment was a proper

8    consideration.  See Tommasetti, 533 F.3d at 1039-40 (reasoning that a favorable response to

9    conservative treatment undermines complaints of disabling symptoms); Parra v. Astrue, 481 F.3d

10   742, 751 (9th Cir. 2007) ("We have previously indicated that evidence of conservative treatment

11   is sufficient to discount a claimant's testimony regarding severity of an impairment."); Fair v.

12   Bowen, 885 F.2d 597, 604 (9th Cir. 1989).  It was also proper for the ALJ to consider plaintiff's

13   positive reaction to the treatment she received.  See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir.

14   2007) ("We have previously indicated that evidence of conservative treatment is sufficient to

15   discount a claimant's testimony regarding severity of an impairment"); Warre v. Comm'r of Soc.

16   Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) (noting that a condition that can be controlled

17   or corrected by medication is not disabling for purposes of determining eligibility for benefits

18   under the Act); Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989); Montijo v. Sec'y of Health &

19   Human Servs., 729 F.2d 599, 600 (9th Cir. 1984); Odle v. Heckler, 707 F.2d 439, 440 (9th Cir.

20   1983).

21          More importantly, the record provides substantial evidence in support of the ALJ's

22   reasoning regarding the conservative nature and effectiveness of the treatment plaintiff received.

23   For instance, plaintiff's treatment for her complaints of back and neck pain consisted largely of

24   prescribed medicines, which generally helped with her symptoms when she was using them, and

25   stretching exercises.  E.g., AT 577, 579, 581, 583, 585-89, 591, 593, 596-99.  The ALJ properly

26   noted this evidence in support of her reasoning.  AT 21.

27          Plaintiff argues that the ALJ failed to properly take into account the side effects that her

28   medications caused her to suffer in reasoning that those medications were effective.  While there

1   is some evidence of plaintiff suffering certain side effects from her medication, AT 52-54, the

2   record also contains ample evidence of plaintiff stating to her physicians that her medications

3   were generally effective in treating her pain and symptoms, e.g., AT 571, 573, 587.  The ALJ's

4   use of this evidence to support her conclusion that plaintiff's pain and symptom testimony was

5   less than fully credible was reasonable, even in light of the evidence that plaintiff's medications

6   caused some side effects.  See Tommasetti, 533 F.3d at 1038 ("The court will uphold the ALJ's

7   conclusion when the evidence is susceptible to more than one rational interpretation.").

8        Third, the ALJ noted plaintiff's unexplained failure to obtain treatment for her alleged

9   mental impairments for a significant period after her alleged disability onset date.  Indeed, the

10   first record regarding plaintiff having received mental health treatment shows that plaintiff had

11   first been prescribed with an antidepressant medication by her OB/GYN physician in the fall of

12   2012, over three years after her alleged onset date of February 16, 2009.  AT 455.  Moreover, that

13   record noted that plaintiff had stopped taking that medication and had not had any prior treatment

14   by a mental health professional.  Id.  The ALJ properly relied on plaintiff's unexplained lack of

15   mental health treatment and failure to take her prescribed antidepressant for a substantial portion

16   of the relevant period in support of her adverse credibility determination.  Tommasetti, 533 F.3d

17   at 1039 ("The ALJ may consider many factors in weighing a claimant's credibility, including . . .

18   unexplained or inadequately explained failure to seek treatment or to follow a prescribed course

19   of treatment . . . .").

20        Fourth, the ALJ determined that the evidence in the record showing that plaintiff ran out

21   of her prescribed medications on several occasions and attempted to obtain refills during visits to

22   the emergency room also undermined plaintiff's credibility.  Indeed, the record shows that

23   plaintiff ran out of medications on several occasions throughout the course of the relevant period

24   and tried to obtain refills on at least two occasions during visits to the emergency room.  AT 396,

25   401, 471, 473, 503.  Plaintiff argues that the ALJ's reasoning that these occurrences undermined

26   her testimony is not substantially supported by the record because it shows that plaintiff far more

27   consistently obtained refills for her medications through appointments with her treating

28   physicians.  In any event, even if this were not a legitimate reason to discount plaintiff's

10

1  testimony, the error is harmless because the ALJ provided several other valid reasons for only

2  partially crediting plaintiff's testimony.  See Molina, 674 F.3d at 1115 (harmless error when ALJ

3  provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided

4  valid reasons that were supported by the record).

5       Finally, the ALJ cited to her own personal observations regarding plaintiff's demeanor

6  during the administrative hearing in support of her adverse credibility determination.  Although

7  the ALJ's observations of the claimant at the hearing may not form the sole basis for discrediting

8  the claimant's testimony, such observations may be used in the overall credibility evaluation.

9  Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir.

10  1985); SSR 96-7p, at *8.  Because the ALJ also provided other clear and convincing reasons in

11  support of her adverse credibility determination, she did not err in providing her own observations

12  as an additional rationale.

13       In short, the ALJ provided multiple clear and convincing reasons for discounting

14  plaintiff's testimony that were supported by substantial evidence in the record.  Accordingly, the

15  ALJ's adverse credibility determination was not erroneous.

16       C. *The ALJ Properly Discounted the Third Party Statement of Plaintiff's Friend*

17       Third, plaintiff argues that the ALJ improperly discounted the lay witness testimony of

18  plaintiff's friend without providing germane reasons for doing so that were specific to that

19  witness.  "[L]ay witness testimony as to a claimant's symptoms or how an impairment affects

20  ability to work is competent evidence, and therefore cannot be disregarded without comment."

21  Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996); see also Dodrill v. Shalala, 12 F.3d 915,

22  918-19 (9th Cir. 1993) (friends and family members in a position to observe a plaintiff's

23  symptoms and daily activities are competent to testify to condition).  "If the ALJ wishes to

24  discount the testimony of the lay witnesses, he must give reasons that are germane to each

25  witness."  Dodrill, 12 F.3d at 919.  Nevertheless, the ALJ is not required "to discuss every

26  witness's testimony on a[n] individualized, witness-by-witness basis."  Molina, 674 F.3d at 1114.

27  Indeed, while the applicable regulations require "the ALJ to consider testimony from family and

28  friends submitted on behalf of the claimant," they "do not require the ALJ to provide express

1   reasons for rejecting testimony from each lay witness." Id. (citing 20 C.F.R. §§ 404.1529(c)(3),

2   404.1545(a)(3)).  "Rather, if the ALJ gives germane reasons for rejecting testimony by one

3   witness, the ALJ need only point to those reasons when rejecting similar testimony by a different

4   witness." Molina, 674 at 1114.

5        When the ALJ provides clear and convincing reasons for discounting a claimant's

6   testimony and the third-party lay witness's testimony is similar to the claimant's testimony, the

7   ALJ's reasons for discounting the claimant's testimony may also constitute germane reasons for

8   rejecting the third-party lay witness's testimony.  Valentine v. Comm'r Soc. Sec. Admin., 574

9   F.3d 685, 694 (9th Cir. 2009); see also Molina, 674 at 1114.  Furthermore, even when the ALJ

10  errs by failing to explain his or her reasons for disregarding a layperson's testimony, such error is

11  harmless if that layperson's testimony largely reflects the limitations described by the claimant

12  and the ALJ provides clear and convincing reasons for discounting the claimant's testimony,

13  because the layperson's testimony in such a circumstance is "inconsequential to the ultimate

14  nondisability determination in the context of the record as a whole." Molina, 674 F.3d at 1122

15  (quotation marks omitted).

16       Here, the ALJ assigned "little weight" to the third party statement provided by plaintiff's

17  friend and in-home support worker, Rhonda McDonald, because it was inconsistent with

18  plaintiff's reported daily living activities, the objective medical findings in the record, and the

19  medical opinions in the record.  AT 22.  These constituted germane reasons for discounting

20  McDonald's statement that were specific to that witness.

21       First, the ALJ determined that McDonald's allegation that plaintiff spent most of her time

22  in bed everyday was contradicted by plaintiff's reported activities of daily living.  As discussed

23  above, the ALJ also provided this reason for discounting plaintiff's allegations of debilitating pain

24  and symptoms, and the court has determined that this was a clear and convincing reason for

25  discounting plaintiff's testimony that was supported by substantial evidence.  Accordingly, the

26  ALJ's use of this reason to also discount McDonald's statement was a germane reason supported

27  by substantial evidence.  Valentine, 574 F.3d at 694.

28  ////

The ALJ also provided other germane reasons for discounting McDonald's third-party statement in determining that it conflicted with the objective medical findings and opinion evidence in the record.  Indeed, as the ALJ noted, while McDonald alleged that plaintiff experienced numbness in her hands, plaintiff's medical records do not substantiate this claim.  E.g., AT 404.  Furthermore, the objective medical findings from plaintiff's physicians in the record generally suggest that plaintiff's symptoms do not cause plaintiff to suffer the degree of limitations McDonald alleged in her statement.  E.g., AT 396, 404, 463-64, 490, 505.  Similarly, the medical opinion evidence the ALJ found to be persuasive indicates that McDonald's opinion regarding the extent of plaintiff's limitations is overly restrictive.  AT 76-80, 87-90, 104, 117, 553.

In addition to the reasons discussed above, the ALJ also determined that McDonald's credibility was undermined by virtue of her relationship with plaintiff as plaintiff's friend.  Plaintiff argues that this was an improper reason for discounting her friend's statement.  However, even assuming that this reason was, by itself, insufficient to support the ALJ's determination, such an error would have been harmless in light of the other germane reasons the ALJ provided.  Valentine, 574 F.3d at 694 (finding that the ALJ erred in discounting the claimant's wife's testimony because she was an "interested party," but that such an error was harmless in light of the other germane reasons the ALJ provided for discounting the wife's statements).

In sum, the ALJ provided multiple germane reasons for discounting McDonald's third-party statement that were specific to that witness and were supported by substantial evidence in the record.  Therefore, the ALJ did not err in her assessment of McDonald's statement.

D. *The ALJ Properly Considered the Medical Opinion Evidence in the Record*

Fourth, plaintiff argues that the ALJ erred in weighing the medical opinion evidence in the record.  Specifically, plaintiff asserts that the ALJ erred in her assessment of the opinions issued by Dr. Soares, Dr. Canty, and Blanca Vasquez, I.M.F.[2]

---

[2] Plaintiff also appears to argue that the ALJ improperly failed to weigh the medical records of Dr. Haddadan.  ECF No. 17 at 16.  To the extent plaintiff makes such an argument, it is without

1   To evaluate whether an ALJ properly rejected a medical opinion, in addition to

2   considering its source, the court considers whether (1) contradictory opinions are in the record,

3   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

4   treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

5   F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

6   rejected for "specific and legitimate" reasons that are supported by substantial evidence.  Id. at

7   830.  While a treating professional's opinion generally is accorded superior weight, if it is

8   contradicted by a supported examining professional's opinion (e.g., supported by different

9   independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d

10  1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In

11  any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

12  findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory,

13  minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

14  non-examining professional, without other evidence, is insufficient to reject the opinion of a

15  treating or examining professional.  Lester, 81 F.3d at 831.

16      1. Dr. Soares

17  Dr. Soares conducted a psychiatric examination of plaintiff on November 19, 2014, which

18  consisted of a review of plaintiff's psychiatric history and a mental status examination.  AT 550-

19  53.  During the mental status examination, Dr. Soares noted that plaintiff was oriented, had fair

20  insight in judgment, and a linear thought process.  AT 550.  She also noted that plaintiff's mood

21  was a "little bit" sad and that plaintiff's affect was "tearful at times."  Id.  Overall, Dr. Soares

22  assessed plaintiff with a Global Assessment of Functioning ("GAF") score of 50, indicating

23

24  merit.  A review of the record reveals that plaintiff received treatment from several physicians,
    including Dr. Haddadan, at Kayvan D. Haddadan, Inc., between February 21, 2013 and August 5,
25  2014.  AT 564-601.  The ALJ expressly considered and discussed these records in her decision.
    AT 16-17.  A review of these records fails to show that any of the physicians who treated plaintiff
26  at that facility, including Dr. Haddadan, provided an opinion regarding the functional limitations
    caused by plaintiff's impairments.  Instead, those records merely discussed plaintiff's claimed
27  symptoms and the course of treatment plaintiff was prescribed during each visit to that facility.
    See AT 564-601.  Accordingly, the ALJ was not required to weigh those records as medical
28  opinions.  See 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

1   serious impairment in social, occupational, or school functioning.  AT 20, 453.

2       The ALJ assigned "little weight" to Dr. Soares' GAF score "because it was not

3   accompanied by a detailed function-by-function analysis and is inconsistent with [plaintiff's]

4   activities of daily living."  AT 20.  The ALJ reasoned further that "Dr. Soares' assessment was

5   based on a one-time evaluation of [plaintiff] and her evaluation was conducted upon a referral

6   from [plaintiff's] representative presumably to establish supporting evidence for [plaintiff's]

7   upcoming hearing."  AT 21.  These were specific and legitimate reasons for discounting Dr.

8   Soares' opined GAF score.

9       First, the ALJ properly discounted Dr. Soares' opinion because it provided little in the

10  way of a function-by-function analysis of plaintiff's mental limitations.  Even though plaintiff

11  makes much of the GAF score Dr. Soares opined, such a score is not dispositive in social security

12  cases.  Trinchere v. Astrue, 2008 WL 4395283, at *6 (C.D. Cal. Sept. 3, 2008).  A low GAF score

13  does not alone determine disability, but is a piece of evidence to be considered with the rest of the

14  record.  Olds v. Astrue, 2008 WL 339757, at *4 (D. Kan. Feb. 5, 2008) (citation omitted).  An

15  ALJ is permitted to discredit a GAF score where it is unsupported by objective evidence.  Clark v.

16  Astrue, 2009 WL 542166, at *6 (C.D. Cal. Mar. 4, 2009).  Here, Dr. Soares provided little in the

17  way of objective findings that would support the restrictive GAF score she opined, and the ALJ

18  properly considered that lack of objective findings and the lack of a function-by-function

19  breakdown of opined mental limitations that support such a restrictive GAF score.  See Meanel,

20  172 F.3d at 1114 (upholding the ALJ's rejection of physician's opinion that was "conclusory and

21  unsubstantiated by relevant medical documentation").

22      The ALJ also properly noted that plaintiff's reported activities of daily living conflicted

23  with the GAF score Dr. Soares opined.  As the ALJ specifically noted in her decision, Dr. Soares

24  restrictive GAF score was at odds with plaintiff's own reports that she participates in a weekly

25  group Bible study, shops at grocery stores and the mall, lives on her own while caring for

26  multiple adolescent children, and regularly communicates with others on the phone and by

27  computer.  AT 20-21.

28  ////

1    Finally, the ALJ found that Dr. Soares' opinion was undermined by the fact that it was

2    based on a one-time examination of plaintiff that was conducted upon a referral from plaintiff's

3    attorney.  The ALJ properly cited to this observation as an additional reason for discounting Dr.

4    Soares' opinion.  Saelee, 94 F.3d at 523; Burkhart, 856 F.2d at 1339 (upholding ALJ's decision to

5    discount a physician's opinion in part on the basis that that opinion had been solicited by the

6    plaintiff's counsel).

7         In short, the ALJ provided multiple specific and legitimate reasons for assigning "little

8    weight" to the GAF score Dr. Soares assessed to plaintiff.  Accordingly, she did not err in her

9    consideration of that physician's opinion.

10              2.  Dr. Canty

11        Dr. Canty conducted a psychiatric examination of plaintiff on June 10, 2013 for purposes

12   of aiding in plaintiff's Social Security disability evaluation.  AT 455-58.  Dr. Canty noted that

13   there were no psychiatric records for him to review and that plaintiff was not taking any

14   psychiatric medications as of that time.  AT 455.  Dr. Canty also noted that plaintiff's thought

15   content was "[c]lear, logical and goal-directed," but that "she appeared moderately to

16   significantly depressed with a blunted affect."  AT 456.  He noted further that plaintiff claimed to

17   not know the day of the week or date, but was able to complete immediate and recent memory

18   exercises with little difficulty and had a "[g]ood" fund of knowledge.  AT 457.  Based on his

19   examination, Dr. Canty diagnosed plaintiff with major depression and assigned her a GAF score

20   of "45/50."  AT 457.  With regard to how plaintiff's mental condition impacted her ability to

21   perform work, Dr. Canty opined that "she would not be able to attend work reliably."  AT 458.

22   He opined further that "[s]he would not be able to concentrate on work activities" and "would not

23   be able to keep up with coworkers or supervisors."  Id.

24        The ALJ assigned "reduced weight" to Dr. Canty's opinion.  AT 20.  More specifically,

25   she assigned "some weight to Dr. Canty's general findings that [plaintiff] does have some mental

26   functioning limitations but not to the extent Dr. Canty opine[d]."  Id.  In reaching this conclusion,

27   the ALJ reasoned as follows:

28   ////

1
2
3
4
5
6
7
8
9
10
11
12

> the undersigned assigns little weight to Dr. Canty's findings that the
> claimant would not be able to attend work reliably and struggled
> with relatively simple cognitive questions. The undersigned finds
> that Dr. Canty's opinion is overly restrictive and that his
> observation that the claimant was not fully oriented is inconsistent
> with the record as a whole. Dr. Canty noted that [plaintiff] was
> genuinely surprised when he informed her of the correct day, date
> and month. However, the record as a whole reflects numerous
> medical visits where the claimant was described as fully alert and
> fully oriented. On March 11, 2012, the claimant did not report any
> psychological symptoms. On August 24, 2013, the claimant was
> oriented to person, place, day, date, year and situation. The
> undersigned notes that one of the only instances of the record when
> the claimant was not fully oriented was during her consultative
> examination. The undersigned finds that the claimant is not fully
> credible and that Dr. Canty's mental functioning limitations are
> overly restrictive given the claimant's limited mental treatment
> record and the fact that the claimant was not taking any
> psychotropic medications.

13
14

AT 20 (references to the record omitted). This rationale provided specific and legitimate reasons

in support of the ALJ's decision to assign reduced weight to Dr. Canty's opinion.

15
16
17
18
19
20
21
22

First, the ALJ properly reasoned that Dr. Canty's opinion was entitled to reduced weight

because the other medical evidence in the record did not support Dr. Canty's observation that

plaintiff was not fully oriented. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the

more consistent an opinion is with the record as a whole, the more weight we will give to that

opinion."). Indeed, the record is replete with findings from plaintiff's treating physicians

describing plaintiff as alert and fully oriented. E.g., AT 320, 322, 338, 344, 352, 359, 505, 527.

As the ALJ noted, the only instance in the record where plaintiff appeared not fully oriented was

during her consultative examination with Dr. Canty. AT 20.

23
24
25
26
27
28

The ALJ also noted that plaintiff was not fully credible and that Dr. Canty's opinion

appeared to reflect plaintiff's complaints. "An ALJ may reject a treating physician's opinion if it

is based 'to a large extent' on a claimant's self-reports that have been properly discounted as

incredible." Tommasetti, 533 F .3d at 1041. Here, the ALJ properly found plaintiff's subjective

complaints regarding the extent of her pain and symptoms to be less than fully credible, and a

review of Dr. Canty's opinion reasonably indicates that it was largely based on plaintiff's own

1  self-reports regarding the impact of her mental impairments.  See AT 455-58.  Accordingly, the

2  ALJ's determination was reasonable and properly supported her decision to discount Dr. Canty's

3  opinion.

4        Finally, the ALJ also noted that the limited mental health treatment plaintiff received and

5  the fact that she was not taking any psychotropic medications at the time of Dr. Canty's

6  examination indicated that that physician's opinion was overly restrictive.  A review of the rest of

7  the record supports the ALJ's determination as it indicates that plaintiff's depression was well

8  controlled once she began taking medication and receiving mental health treatment.  E.g., AT

9  595.

10        Plaintiff argues that the ALJ erred in her assessment of Dr. Canty's opinion because the

11  GAF score he assigned to plaintiff was largely consistent with the GAF score assigned by Dr.

12  Soares.  However, the ALJ properly discounted the GAF score Dr. Soares assigned for the

13  reasons discussed above.  Moreover, the ALJ provided the above specific and legitimate reasons

14  for discounting Dr. Canty's opinion that were supported by substantial evidence in the record.

15  Such reasons were sufficient to support the ALJ's assignment of weight to Dr. Canty's opinion

16  regardless of any similarities between that physician's opinion and Dr. Soares' opinion.

17  Therefore, plaintiff's argument is without merit and the ALJ did not err in her assessment of Dr.

18  Canty's opinion.

19              3.  Blanca Velasquez, I.M.F.

20        On October 6, 2014, Blanca Velasquez, I.M.F., performed a mental evaluation of plaintiff

21  and assigned her a GAF score of 56, indicating moderate difficulties in social, occupational, or

22  school functioning.  AT 553.  While the ALJ noted in her decision that Ms. Velasquez was not a

23  doctor, she assigned "substantial weight" to her assessment because it was consistent with

24  plaintiff's reported daily activities and also took into account plaintiff's depression and plaintiff's

25  subjective complaints regarding the impact of that mental impairment to the extent they were

26  credible.  AT 20.  Plaintiff argues that the ALJ's assignment of substantial weight to Ms.

27  ////

28  ////

18

1    Velasquez's GAF score was in error because Ms. Velasquez was not a doctor.[3]  This argument,

2    however, is without merit.

3        While the ALJ could only rely on evidence provided by plaintiff's physicians to establish

4    her medically determinable impairments, she was permitted to consider and weigh the evidence

5    from those defined by the applicable regulations as "other sources," including other medical

6    sources such as Ms. Velasquez, in determining the impact those impairments had on plaintiff's

7    work-related functioning.  20 C.F.R. §§ 404.1513(d), 416.913(d).  Furthermore, the Social

8    Security Agency-promulgated SSR 06-03p states that, under certain circumstances, "an opinion

9    from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an

10   'acceptable medical source,' including the medical opinion of a treating source."  2006 WL

11   2329939 at *5.  Accordingly, the ALJ was permitted to assign greater weight to Ms. Velasquez's

12   opinion over those of plaintiff's other physicians provided that there existed substantial evidence

13   to support her conclusion.

14       Here, the ALJ determined that Ms. Velasquez's opinion most accurately reflected a

15   balance between plaintiff's reported daily activities, such as plaintiff's ability to live on her own

16   with four children, complete household chores, and prepare meals for herself, and plaintiff's own

17   testimony regarding the impact of her mental impairments to the extent it was credible.  AT 20.

18   Such a determination was reasonable in light of the other opinion evidence in the record.  Outside

19   of Dr. Canty's properly-discredited opinion, the other two physicians who opined on plaintiff's

20   mental impairments, Dr. Mateus and Dr. Dalton, both found that plaintiff had no severe mental

21   impairments.  AT 78-80, 89-91, 104-05, 117-18.  The ALJ assigned these physicians' opinions

22   "reduced weight" because they had not examined plaintiff nor considered her subjective

23   ─────────────────────

24   [3] Plaintiff also argues that Ms. Velasquez actually assigned plaintiff a GAF score of 50 instead of 56.  However, a review of Ms. Velasquez's opinion shows that the ALJ reasonably determined

25   that she had assigned plaintiff a GAF score of 56.  At the top of the page of Ms. Velasquez's opinion, a GAF score of 50 is noted; however, Ms. Velasquez noted specifically in her analysis of

26   plaintiff's mental impairments that she assigned plaintiff a GAF score of 56.  AT 553.  The ALJ reasonably concluded that the operative score provided by Ms. Velasquez was 56.  See Edlund,

27   253 F.3d at 1156 (noting that the ALJ is responsible for resolving ambiguities in the record); Tommasetti, 533 F.3d at 1038 ("The court will uphold the ALJ's conclusion when the evidence is

28   susceptible to more than one rational interpretation.").

1    complaints, and reasonably determined that Ms. Velasquez, who had examined plaintiff and heard

2    and considered her subjective complaints, provided a more persuasive opinion.  AT 19-20.  In

3    short, substantial evidence in the record supported the ALJ's reasoning for weighing Ms.

4    Velasquez's opinion as she did.

5        E.   *The ALJ Made a Proper Determination that Plaintiff Could Perform Other Work at*

6             *Step Five*

7        Finally, plaintiff argues that the ALJ erred in her step five determination that plaintiff

8    could perform other work available in the national economy.  Specifically, plaintiff contends that

9    the ALJ improperly found that plaintiff could still perform the occupations of mail clerk,

10   cleaning/housekeeping, and car wash attendant, all of which the Dictionary of Occupational Titles

11   ("DOT") defines as requiring the exertional capacity to perform "light work," despite previously

12   finding at step four that plaintiff could not perform her past work in customer service, which the

13   DOT defines as requiring the exertional capacity to perform "sedentary work."  Plaintiff asserts

14   that the ALJ's step four and step five determinations are inherently contradictory because, on the

15   one hand, she determined at step four that plaintiff's RFC prevented her from performing her

16   prior work that required only a sedentary capacity, while, on the other, she found at step five that

17   plaintiff was still capable of performing other occupations that all required the capacity to

18   perform light work.  Plaintiff's argument is without merit, however, because the ALJ did not find

19   that plaintiff could not perform her prior work on the basis that her RFC rendered her incapable of

20   performing work at a sedentary exertional level.  Instead, the ALJ relied at step four on the

21   vocational expert's ("VE") testimony that plaintiff could not perform her past work due to her

22   non-exertional mental limitation to simple repetitive tasks.  AT 23, 68.  The VE testified in

23   response to a hypothetical posed by the ALJ based on the limitations contained in the ALJ's well-

24   reasoned RFC determination that a person with plaintiff's limitations would not be able to

25   perform plaintiff's past work due to the limitation to simple repetitive tasks, but could perform

26   work in the occupations of mail clerk, cleaning/housekeeping, and car wash attendant given those

27   same limitations.  AT 68-69.  The ALJ properly relied on this testimony to support her

28   determinations at steps four and five of the sequential analysis.

V.      <u>CONCLUSION</u>

For the reasons stated herein, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (ECF No. 17) is denied;

2.  The Commissioner's cross-motion for summary judgment (ECF No. 20) is granted; and

3.  Judgment is entered for the Commissioner.

Dated:  October 6, 2016

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

11 king-bailey2024.ss